# IN THE COURT OF APPEALS OF IOWA

No. 16-0948
Filed June 7, 2017

**RYAN NICHOLAS TROWBRIDGE,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

    Appeal from the Iowa District Court for Polk County, Karen A. Romano,

Judge.


    Ryan Trowbridge appeals from the denial of his application for

postconviction relief. **AFFIRMED.**



    Alfredo Parrish of Parrish Kruidenier Dunn Boles Gribble Gentry Brown &

Bergmann, L.L.P., Des Moines, for appellant.

    Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney

General, for appellee State.



    Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**DANILSON, Chief Judge.**

Ryan Trowbridge appeals from the denial of his application for postconviction relief (PCR). He claims trial counsel was constitutionally ineffective in failing to "accurately and properly advise [him] in waiving his constitutional right to confrontation as to Dr. [Carole] Jenny and allowing her to testify in rebuttal by telephone."

Generally, our review of PCR proceedings is for correction of errors at law. *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001). "However, when the applicant asserts claims of a constitutional nature, our review is de novo. Thus, we review claims of ineffective assistance of counsel de novo." *Id.*

"To prevail on a claim of ineffective assistance of counsel, a claimant must satisfy the *Strickland* [*v. Washington*, 466 U.S. 668 (1984)] test by showing '(1) counsel failed to perform an essential duty; and (2) prejudice resulted.'" *State v. Clay*, 824 N.W.2d 488, 495 (Iowa 2012) (citation omitted). "Both elements must be proven by a preponderance of the evidence." *Ledezma*, 626 N.W.2d at 142.

After an eight-day bench trial, Trowbridge was convicted of first-degree murder and child endangerment resulting in the death of his four-month-old child. *State v. Trowbridge*, No. 12-2272, 2014 WL 955404, at *1 (Iowa Ct. App. Mar. 12, 2014). There was extensive expert witness evidence as to the cause of the child's death. *See id.* at *1-3.

On direct appeal, Trowbridge contended the trial court erred in allowing the rebuttal testimony of Dr. Jenny over defendant's objection. He argued the rebuttal testimony concerning the conclusion the child died from abusive head trauma was submitted merely to "corroborate, reiterate and repeat the State's

theory of the case." *Id.* at *6. This court concluded the trial court was "well within its discretion" to allow testimony it determined "was offered to explain, controvert, or disprove the testimony of the defense experts." *Id.* The supreme court denied further review.

In his PCR application, Trowbridge asserts his trial counsel failed to perform the essential duty of adequately advising him of his right to confront Dr. Jenny. He asserts prejudice may be presumed because counsel committed structural error as recognized in *Lado v. State*, 804 N.W.2d 248 (Iowa 2011).[1] The district court rejected these claims, as do we.

Trowbridge testified he did not know that Dr. Jenny was going to testify in rebuttal "until the very last second." He stated his defense attorneys "brought it up to me" that he had a right to confront that witness and ask her questions in person. When asked to characterize the discussion, he testified, "We had a brief talk prior to what's on the record," which he could not remember at the time of the PCR hearing. He knew Dr. Jenny would be testifying over the telephone.

The record indicates the State first informed the court it would call Dr. Jenny in rebuttal on the sixth day of trial, with Dr. Jenny expected to testify on the

---

[1] In *Lado*, 804 N.W.2d at 252, the supreme court noted:

> Defense counsel, however, may also commit "structural errors." Structural errors are not merely errors in a legal proceeding, but errors "affecting the framework within which the trial proceeds." *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991). We have recognized structural error occurs when: (1) counsel is completely denied, actually or constructively, at a crucial stage of the proceeding; (2) where counsel does not place the prosecution's case against meaningful adversarial testing; or (3) where surrounding circumstances justify a presumption of ineffectiveness, such as where counsel has an actual conflict of interest in jointly representing multiple defendants. *State v. Feregrino*, 756 N.W.2d 700, 707 (Iowa 2008) (citing [*United States v. Cronic,* 466 U.S. 648, 659 (1984)]).

(Footnote omitted.)

seventh day of trial. However, the court was advised on the seventh day of trial that Dr. Jenny was not available that date but would testify the following day. Defense counsel made the following record before Dr. Jenny's testimony, which was taken via telephone:

> THE COURT: You may get her on the phone, and I will swear her in.
> MR. PENNINGTON [defense counsel]: Perhaps we should make a record that we have discussed with the client that we are doing this—we have a right to confront witnesses. In our judgment we do not believe in any way that we are prejudiced by having this lady testify over the phone as opposed to in person, and we've discussed that with Ryan. Is this okay to proceed in this manner?
> THE DEFENDANT: Yes.
> THE COURT: Very well.

PCR counsel argues this record does not support a finding that Trowbridge was properly advised and knowingly waived his right to confront the witness.

Trial counsel testified at the PCR hearing that he discussed things with Trowbridge that were not included in the record, including the decision to allow Dr. Jenny to testify over the phone. Counsel testified the basis for this decision, as explained to Trowbridge, was to weaken the impact of Dr. Jenny's testimony and minimize the damage it would cause Trowbridge's case.[2] He testified further

---

[2] Trial counsel stated, in part,

> Well, what we told him was, in a nutshell, this lady is not our friend. And she is going to come in and have devastating testimony that is going to be helpful for the [S]tate. Typically people want their best witnesses to come in live and in person because it has a more dramatic effect on the fact finder, be it a court or be it a jury. That's why in almost every trial it's very important that you have your witnesses come in live rather than being videotaped, if possible, because the impression it will make.
> I think it hurt the State to allow their witness to be cross-examined by the telephone. I think it was a judgment call that benefited our case. That's what I explained.
> . . . .

that Trowbridge agreed with defense counsel's recommendation to proceed by telephone. During his testimony at the postconviction hearing, Trowbridge acknowledged that he was informed of his right to confront the witness and did not dispute that he agreed to the strategy. Our supreme court has concluded that an equally important constitutional right, the right to testify in one's own defense, may be waived without a specific inquiry on the record. *State v Reynolds*, 670 N.W.2d 405, 411 (Iowa 2003). Because trial counsel had informed Trowbridge of his right to confront the witness and Trowbridge agreed to the strategy to support the waiver, trial counsel had no duty to object to the propriety of the court's colloquy.

Moreover, the PCR court, in a thorough and well-reasoned ruling, determined trial counsel had made a reasonable strategic choice in proceeding by telephone, *see State v. Yaw*, 398 N.W.2d 803, 806-07 (Iowa 1987) (deeming counsel's strategic choice to allow the introduction of victim depositions in lieu of live testimony to be a "sound tactical decision well within the range of a reasonable professional competence expected from an attorney"), and

---

And I believe that telephonically she was not as effective. Also, part of the reason is she was not as knowledgeable about the case as I think she certainly would have been had she flown back to Des Moines. She would have been provided with a more in-depth summary of our medical expert's testimony, and would have tried point by point to rebut it.

. . . .

Again, I think it's to the detriment of the State by allowing a witness, a medical witness, to be heard via telephone. I know in my practice I would not want one of my expert witnesses to testify solely via the telephone. I would prefer to videotape. I think by using the videotape, it just gives more gravitas, more importance, more believability, more credibility to an expert witness if you can see. Why should I give that advantage to the [S]tate when we have just a telephone?

Trowbridge "was aware of and understood his right of confrontation and the decision to waive it, which he made voluntarily." *See State v. Hilpipre*, 242 N.W.2d 306, 309 (Iowa 1976) ("It is well settled an individual may legally waive his or her constitutional rights."); *see also State v. Turner*, 345 N.W.2d 552, 559 (Iowa Ct. App. 1983) (noting it is the State's burden to show the defendant's "waiver of the right of confrontation was knowing, intelligent, and voluntary").

With respect to the claim of structural error, in *Lado*, the supreme court concluded that PCR counsel's failure to avoid a rule 1.944 dismissal left Lado "constructively without counsel during his [PCR] proceeding," which rendered the entire proceeding "presumptively unreliable," constituting structural error. 804 N.W.2d at 252-53. The prejudice prong is presumed when trial counsel commits a structural error. *Id.*

To evaluate Trowbridge's claim, we first consider the "[t]wo important policies [that] underlie the Confrontation Clause: a preference for face-to-face confrontation at trial and the right of cross-examination." *State v. Newell*, 710 N.W.2d 6, 24 (Iowa 2006) (citation omitted). While face-to-face confrontation is preferred, it is not an absolute right. In cases where there is not a waiver, if a court makes "a case-specific determination that the denial of the defendant's confrontation right is necessary to further an important public interest," the witness may be permitted to testify. *State v. Rogerson*, 855 N.W.2d 495, 505 (Iowa 2014); *see Maryland v. Craig*, 497 U.S. 836, 849-50 (1990).

"The principal interest secured by the Confrontation Clause of the Sixth Amendment to the United States Constitution is the right of effective cross-examination." *State v. Aldape*, 307 N.W.2d 32, 43 (Iowa 1981). In *Aldape*, the

supreme court concluded telephonic testimony did not violate the defendant's right of confrontation because the trial court had a satisfactory basis for evaluating the testimony. *Id.* But here, because Trowbridge waived his right to confront the witness, the district court was not required to make a finding of an important interest as noted in *Rogerson* and *Craig.*

Further, defense counsel vigorously cross-examined Dr. Jenny. And notwithstanding some issues with the telephone communication, the PCR court found trial counsel was able to cross-examine the rebuttal witness effectively. The PCR court also concluded the trial court was not deprived of a satisfactory basis to evaluate Dr. Jenny's testimony. Ultimately, the PCR court rejected Trowbridge's claim that allowing telephonic rebuttal testimony by Dr. Jenny constituted structural error. While we acknowledge Trowbridge claims the cross-examination could have been performed better face-to-face for a variety of reasons, we agree with the PCR court that there has been no deprivation of Trowbridge's constitutional right of confrontation or structural error under these facts. Consequently, Trowbridge was not entitled to the presumption of prejudice by the existence of a structural error.

The PCR court continued, concluding even if one assumed improper cross-examination, "there is no reasonable probability that the result of the proceeding would have been different." We agree. There was much medical evidence presented in the bench trial by various experts and their testimony was relied upon by the district court. There is no indication that Dr. Jenny's testimony was of such significance to suggest the absence of her testimony would have

provided a different result. At best, her testimony presented on rebuttal was cumulative.

We find no reason to disturb the district court's findings or conclusions. Because Trowbridge has failed to establish that trial counsel performed deficiently or that prejudice resulted, we affirm the denial of his application of postconviction relief.

**AFFIRMED.**